USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 30 2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

VERIPATH, INC., *a Delaware Corporation*,

                     Plaintiff,

    -against-

DIDOMI, *a Foreign entity*,

                     Defendant.

------------------------------------- x

<u>MEMORANDUM DECISION</u>
<u>AND ORDER</u>

19 Civ. 1702 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff VeriPath, Inc. brings this action against Defendant Didomi for infringement of U.S. Patent No. 10,075,451 (the "'451 Patent") under the Patent Act, 35 U.S.C. § 271. (Am. Compl., ECF No. 18.) Defendant moves to dismiss the amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def. Didomi's Notice of Mot. to Dismiss, ECF No. 23.) Specifically, Defendant asserts that the claim at issue—namely, claim 1 of the '451 patent—is patent ineligible under 35 U.S.C. § 101. Defendant's motion to dismiss for failure to state a claim is GRANTED.

## I.    FACTUAL BACKGROUND

Plaintiff asserts that the '451 Patent provides, *inter alia*, "methods for controlling access to a user's personal information in the management of the user's privacy of such personal information on computer systems by allowing the user to opt-in to data sharing arrangements as part of data privacy agreements." (Am. Compl. ¶ 17.) The personal information may include the user's name, location, address, age, gender, income, marital status, and transactional history. (Am. Compl., Ex. 1 ('451 Patent), ECF No. 18-1, at 3:27–31.) The use may include analytics, market research, market segmentation, and disclosure to third parties. (*Id.* at 3:32–34.) Plaintiff claims that the

'451 Patent has "solved and improved the technological drawbacks of the then-current data collection and privacy schemes by creating a technologically improved system and application that efficiently collects and manages user consent and data in real-time while permitting the use of enhanced functions of the website or mobile application accessed by the user based on the received consents." (Am. Compl. ¶ 18.)

The '451 Patent, titled "Methods and Systems for User Opt-in to Data Privacy Agreements," was issued by the United States Patent and Trademark Office (the "PTO") on September 11, 2018. (*Id.* ¶ 16.) It is comprised of 17 claims. Claim 1 of the '451 Patent recites, in full:

> A method for controlling access to a user's personal information comprising:
>
> providing a software component for inclusion in an application, the software component having an application programming interface (API);
>
> obtaining, from the application executing on a device of a user of the application, personal information about the user of the application, the personal information obtained via the API by the software component executing on the device;
>
> identifying the type of the obtained personal information;
>
> determining, based on at least the type of obtained personal information, a required permission from the user for at least one proposed use of the obtained personal information;
>
> presenting, to the user, a first offer to provide access to at least one enhanced function of the application in exchange for the required permission; and
>
> responsive to the user providing the required permission, providing the user with access to the at least one enhanced function of the application.

(Am. Compl., Ex. A ('451 Patent), at 16:8–28.) Simply put, claim 1 describes a privacy-for-functionality agreement wherein an API[1] provides personal information from a software

---

[1] An API or application programming interface defined as "[a] set of functions and procedures allowing the creation of applications that access the features or data of an operating system, application, or other service."

application and the user is then asked for permission for the use of such information in exchange for enhanced functionality of the application.[2]

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[3]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3

---

API, Oxford Living Dictionaries, *available at* https://en.oxforddictionaries.com/definition/api (last visited Mar. 28, 2020, 11:51 PM).

[2] For instance, at oral argument, Defendant likened this agreement to ways in which a consumer at a grocery store would provide personal information—such as name, telephone number, and email address—and sign up for a membership card in exchange for discounts on certain items. (Dec. 10, 2019 Oral Arg. Tr, ECF No. 32, 9:23–10:6.)

[3] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

3

(S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

### III. DEFENDANT'S MOTION TO DISMISS IS GRANTED

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent . . . ." 35 U.S.C. § 101. A patent is presumed valid under 35 U.S.C. § 282. The party challenging the validity of a patent bears the burden of proving the factual elements of invalidity by clear and convincing evidence. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007). Under § 101, patent eligibility is a question of law based on underlying issues of fact. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). The Supreme Court has held that "[l]aws of nature, natural phenomena, and abstract ideas are not patent eligible." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013)).

The Supreme Court has established a two-step framework for determining patent eligibility under § 101. *Id.* at 217. First, courts must determine whether the claim at issue is directed to a "patent-ineligible concept," such as an abstract idea. *Id.* If so, courts then must determine whether the claim's elements include an "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)).

#### A. Claim 1 of the '451 Patent is Directed to an Abstract Idea That is Patent Ineligible.

Parsing the two steps in the *Alice* framework "involve[s] overlapping scrutiny of the content of the claims," but the "Supreme Court's formulation makes clear that the first-stage filter is a meaningful one, sometimes ending the § 101 inquiry." *Elec. Power Grp., LLC v. Alstom S.A.*,

4

830 F.3d 1350, 1353 (Fed. Cir. 2016). Accordingly, in the context of computer software patents, *Alice* step one requires courts to "articulate with specificity what the claims are directed to . . . , and 'ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.'" *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017) (citations omitted). Further, "[i]n cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1347 (Fed. Cir. 2018) (citations omitted). Such asserted improvement in computer functionality must have "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *SAP Am.*, 898 F.3d at 1167. Indeed, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. Stating an abstract idea 'while adding the words "apply it"' is not enough for patent eligibility." *Alice*, 573 U.S. at 223.

Claim 1 of the '451 Patent is directed to the abstract idea of granting permission to access personal information in exchange for enhanced functionality via the API, a routine piece of software. According to '451 Patent's specification, claim 1 is directed to "control[ ] access to a user's personal information in the management of the user's privacy of such personal information on computer systems by allowing the user to opt-in to data sharing arrangements as part of data privacy agreements." (Am. Compl., Ex. 1 ('451 Patent), at 1:15-21.) "Stripped of excess verbiage," *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1339 (Fed. Cir. 2017), at its most basic level, claim 1 is anchored on the abstract idea of exchanging privacy for functionality, which is not an improvement in computer functionality, but merely using

5

computers—here, the API—as a tool. *Ancora Techs*, 908 F.3d at 1347 (citation omitted). "[T]he recitation of a generic computer," nonetheless, "cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

Plaintiff, in its opposition brief, contends that the '451 Patent provides improvement in computer functionality "by teaching a very specific solution to the technical problems faced by prior art data privacy systems and methods." (Pl. Veripath's Mem. of Law in Opp'n to Def. Didomi's Mot. to Dismiss ("Pl. Mem."), ECF No. 28, at 12.) In support of this proposition, Plaintiff simply paraphrases claim 1:

> the VeriPath Claims require that the data privacy system and method comprises the following specific steps: (i) providing a software component for inclusion in an application, the software component having an application programming interface (API); (ii) obtaining, from the application executing on a device of a user of the application, personal information about the user of the application, the personal information obtained via the API by the software component executing on the device; (iii) identifying the type of the obtained personal information; (iv) determining, based on at least the type of obtained personal information, a required permission from the user for at least one proposed use of the obtained personal information; (v) presenting, to the user, a first offer to provide access to at least one enhanced function of the application in exchange for the required permission; and (vi) responsive to the user providing the required permission, providing the user with access to the at least one enhanced function of the application.

(*Id.* at 12.) In general, "[s]oftware can make non-abstract improvements to computer technology just as hardware improvements can[.]" *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). "But to be directed to a patent-eligible improvement to computer functionality, the claims must be directed to an improvement to the functionality of the computer or network platform itself." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359 (Fed. Cir. 2020) (citations omitted). Here, although, according to Plaintiff, claim 1 offers a solution—precisely, granting permission to access previously obtained personal information via the API in exchange for some enhanced function of an application that a user is attempting to access—it fails to teach a "specific way to improve the functionality of a computer." *Koninklijke KPN N.V. v. Gemalto*

*M2M GmbH*, 942 F.3d 1143, 1152 (Fed. Cir. 2019). Even if Plaintiff's assertions were accepted, the '451 Patent simply improves the abstract concept of privacy-for-functionality by invoking the API as a tool. *See, e.g., Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369–70 (Fed. Cir. 2015) (holding that claims reciting a system for providing websites tailored to a user were directed to an abstract idea); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715–16 (Fed. Cir. 2014) (holding that displaying an advertisement to user in exchange for access to copyrighted material is an abstract idea); *SAP Am.*, 898 F.3d at 1167–68 (holding that claims "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis" were directed to an abstract idea). Indeed, the '451 Patent is no more than an improvement to the abstract notion of exchanging privacy for functionality utilizing a piece of software to achieve the desired result.

### B. The '451 Patent Lacks Any Inventive Concept Sufficient to Transform an Otherwise Abstract Idea into a Patent-Eligible Application.

At *Alice* step two, courts must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 78–79). In particular, *Alice* step two "looks more precisely at what the claim elements add" in order to determine whether "they identify an inventive concept in the application of the ineligible matter to which . . . the claim is directed." *SAP Am.*, 898 F.3d at 1167.

Here, the '451 Patent does not include an inventive concept sufficient to convert an abstract concept into a patent-eligible application. The steps asserted in claim 1 of '451 Patent that constitute the method of the invention are high-level steps lacking anything technological or inventive that simply describe the abstract idea of exchanging privacy for functionality. It is well-settled law that such abstract steps need not be considered at *Alice* step two to determine whether

7

there is "something more" in the claim. *See, e.g., BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."); *SAP Am.*, 898 F.3d at 1168–69 (Fed. Cir. 2018) (disregarding claim limitations that "are themselves abstract" in the analysis of *Alice* step two).

Plaintiff argues that "the real-time data privacy and opt-in system and methods . . . undoubtedly teach a 'technology-based solution' that improves the function of the prior art systems and methods, and thus adds inventive concepts sufficient to pass *Alice* Step 2." (Pl. Mem. at 16.) Further, Plaintiff contends that additional elements of the claims transform the claimed invention into a patent-eligible application on the basis that:

> VeriPath Claims require the generation of a user-specific privacy disclosure based on a user's personal information *before* presenting the user-specific privacy disclosure to the user, receiving the user's opt-in consent, collecting a user's personal information, and providing the user with the use of an enhance functionality of the application in exchange for the consent.

(Pl. Mem. at 17–18 (emphasis in original).) Plaintiff's arguments to the contrary are unconvincing. It is not enough to merely state that the claims teach a technology-based solution, which improves the functionality of the prior art systems and methods, without identifying an inventive concept other than the abstract idea to which claim 1 is directed. Moreover, mere recitation of the use of a generic computer or adding the words "apply it with a computer"—here, the API—cannot transform an abstract idea into a patent-eligible invention. *Alice*, 573 U.S. at 221. Accordingly, the '451 Patent lacks any inventive concept that would salvage it from invalidity.

8

## C. The Dependent Claims of the '451 Patent are not Patent Eligible.

The dependent claims of the '451 Patent assert an abstract idea, which is patent ineligible, rendering them invalid. In its opposition brief, Plaintiff claims that "[t]he Amended Complaint alleges that Didomi infringes the claims of the '451 Patent generally, identifying claim 1 as an example only" and argues that it pled sufficiently to support assertions of the dependent claims. (Pl. Mem. at 15.) Even assuming *arguendo* that Plaintiff had asserted the dependent claims, they are considerably analogous to claim 1 and suffer from similar defects. For instance, claims 2 and 3 claim different embodiments of "enhanced functions" of claim 1. (Am. Compl., Ex. 1 ('451 Patent), at 16:29–36.) Additionally, Plaintiff points to claims 8, 9, 11, 12, 14, and 16 to argue that they "provide additional specific elements and steps required by improved systems and methods claimed by the '451 patent[.]" (Pl. Mem. at 12.) However, those claims merely use vague terms to implement claim 1's abstract concept. (*See, e.g.*, Am. Compl., Ex. 1 ('451 Patent), at 16:60–18:17 (reciting, among other things, claim 8 as "determining a second required permission from the user for a second at least one proposed use of the personal information;" claim 9 as "determining the required permission from the user;" claim 11 as "identifying at least one piece of personal information;" claim 12 as "determining a value . . . for at least one proposed use of the personal information . . . generating the first offer based;" claim 14 as "displaying at least one item of personal information"; and claim 16 as "receiving, from user, an indication regarding required permission via a user interface of the device").) Indeed, the dependent claims are also directed to the abstract idea of exchanging privacy for functionality. As such, analyzing each of the dependent claims in a § 101 analysis is unnecessary when they are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,

9

776 F.3d 1343, 1348 (Fed. Cir. 2014). Without more, the dependent claims of '451 Patent are insufficient to transform the invention into patent eligible subject matter.

## IV. CONCLUSION

Defendant's motion to dismiss, (ECF No. 23), is GRANTED. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
March 30, 2020

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge